Good morning, Your Honors. May it please the Court, Mike Purcell for the petition in this case. I'll try to be succinct with the matter, Your Honor. The case comes down to whether there was sufficient evidence to establish torture under the Convention Against Torture. In this particular case, the events were, admittedly, quite some time ago in Guatemala. What was occurring there was he had been essentially conscripted into the Guatemalan Army. As a matter of punishment, he'd been confined in a cell, or I think he called it a hole, for one to two weeks, solitary confinement. I think he'd been run for an hour with a bag of rocks on his back and then hit in the stomach and kicked. The court, back in 1999, when the first case, excuse me, when the case first came to the Immigration Court, the court found that overall he hadn't carried his burden on asylum but did not address the Convention Against Torture claim. What did they do with credibility in the BIA? Your Honor, at the BIA, my understanding was they simply stated that he hadn't established his claim. I don't think that they addressed the issue of credibility. That was addressed, however, by the ---- But was that something you even talked about in your briefs? Your Honor, I don't think I do, Your Honor. I think that the issue, when we go back to the Immigration Court, he doesn't really address the issue of credibility on this particular point. He simply states that the evidence is not sufficient, even if granting him credibility on the point. So are you suggesting we give him credibility or not? I'm suggesting that the court did not find credibility or lack of finding credibility on these points, Your Honor, and therefore, without that particular finding, that this particular point should be deemed as established. Well, I'm wondering if you even exhausted credibility at the BIA. Did you appeal credibility to the BIA? Well, Your Honor, I don't ---- I think the BIA does not really review credibility.  Well, I understand that they would not review, but if you're going to fight the credibility determination or do something about it, you usually say something to the BIA. Well, Your Honor, I don't think that this matter bears upon credibility. I'm not asking this Court to review credibility, Your Honor. So are you suggesting that we deem, then, your Petitioner credible simply because nobody said anything about it? Is that what you're suggesting? Well, that's not quite what I'm suggesting, Your Honor. What I'm suggesting, Your Honor, at least when I look at page 167 of the record, the Court essentially says that ---- The Court said that the Petitioner was naïve in his view of the service that he had in the Army. Is that correct? I'm sorry, Your Honor, naïve? Isn't that what the ALJ said? Well, Your Honor, the ALJ actually has two opinions. In the first opinion, they talk on page 7, which begins on page 197 of the record. I don't ---- I see him not saying that he wasn't ---- that these events that I'm talking about, these confinements, were not themselves incredible, but they were not essentially torture. Well, he didn't address in the first opinion. In the second opinion, he did. It was not torture under the Convention Against Torture. Well, I guess my worry about this is that I believe the IJ had found an adverse credibility determination, and I guess I'm trying to figure out what I do with that. Because if there's adverse credibility, as the IJ has suggested, then I don't give any favor to the petitioner. I don't suggest that his testimony is credible, and, therefore, I don't give any credibility to it. And so I guess my biggest problem right off the bat is the IJ found him not credible, and I don't know if you are suggesting that the BIA adopted the IJ's adverse credibility determination. I'm willing to go with that, but I didn't really see that in your briefs. And so I'm trying to figure out what I should do. Well, Your Honor, looking over it, I don't see where there was a negative credibility finding on this particular point. I see here on page 198 the Court says there is some disconnect, but it doesn't go out and say you're not telling me the truth on this here. I don't see where the Court, the Immigration Court, did not appear to doubt his statements about the situation that we are saying forms the basis of the application for relief under the Convention Against Torture. What was the time between the time that he was last mistreated and when he deserted? Your Honor, I'm not quite sure when that was, but he was in the Army for some time. He left the Army, or he left Guatemala in June of 1991, and this, I believe, occurred in the late 80s. So he was in the Army for some time after this occurred. Counsel, let me ask you about the jurisdictional question that the government raises. What's your response? Yes, Your Honor. The case is subject to Section 242 of the Immigration and Nationality Act, which is 8 U.S.C. 1252. That governs, as the Court is aware, jurisdiction over petitions for review of these sort of orders. It basically adopts the administrative procedure for general administrative law with a lot of significant exceptions. However, none of them apply here. The person was convicted. The petitioner was convicted of a crime. There's no doubt about the conviction. Yes. Right. There's no question that he was convicted of a crime that might make review difficult, but this particular case is rescue. It would be difficult. It would foreclose any kind of review. It would take away jurisdiction of this Court. Well, impossible, Your Honor. But he was rescued, Your Honor, by the Real ID Act, which amended the section or amended the review provisions to allow this Court to look into questions of law, and the Court's precedent allows that to extend to mixed questions of law and fact, which I submit that this poses for the Court. So you're really suggesting that this is a mixed question of law and fact that we ought to think about? What is the mixed question of law and fact if he was really convicted of possession of cocaine, which nobody seems to even argue about? Well, the question, Your Honor, is whether or not the treatment he describes in Guatemala amounts to torture under the Convention Against Torture Act. Well, but how do we get to that? If we have a possession of cocaine and a conviction and you're not giving us any way to get jurisdiction other than mixed question of law and fact, how do I even get to whether there was torture or not? He's automatically out on jurisdiction grounds on the prior controlled substance. Well, Your Honor, I think that the Real ID Act supersedes these. My part of the Real ID Act would suggest that I can undo jurisdiction on a prior controlled offense. Yes, Your Honor. That is in, if I can just refresh my memory here, Your Honor, there is a case, the Morales v. Gonzalez case, Your Honor, where it was a similar situation where the person was held to be subject to removal for a crime specified in the same statute that appears to bar relief here. In that situation, they applied for the exact same set of relief. And they first held that although they lacked jurisdiction to review the fine of removal, they still had jurisdiction to review the application for relief from removal. And I think that the Morales case is on all four with this situation here, Your Honor. Let me go back to my credibility determination. It seems to me that the IJ said that he was uncredible because his testimony in one instance was that all of this occurred during his first term of service and he wouldn't have gone back. And yet in one set of other testimony, he said it happened in his second term of service. Now, the persecution that he says happens is substantial evidence going to the heart of the claim. So given that the IJ feels like that makes him incredible, how do I suggest that the IJ did not make a credibility finding? Well, Your Honor, if you look at the IJ's report, I guess I don't see him making a specific finding that he's not credible on these points, Your Honor. I think he felt that he was not persuasive. So you're suggesting I can look at the IJ's decision and he didn't make a finding on credibility? That's what I'm suggesting, Your Honor, on this particular point. I only have 31 seconds left, Your Honor. If the Court has any other questions. Want to reserve? Yes, please, Your Honor. Thank you, Mr. Counsel. We'll hear from the government. Good morning, Your Honors. May it please the Court. Jonathan Robbins here on behalf of the Respondent Eric Holder. With respect to the credibility determination, certainly in the Board's decisions, it doesn't address credibility. It only addresses the burden of proof finding. But on appeal to the BIA, they never challenge the adverse credibility finding. Now, we know that this Court says that when the Board doesn't explicitly adopt an adverse credibility finding, it's not upheld. But if they don't challenge it, the Board really doesn't have a reason to address it. So I'm not sure where the Court falls in that particular instance. But even regardless of any credibility findings, even under the burden of proof Should we then remand to the Board to make a finding about his credibility? Well, one, they never argued it to the Board in the first place. It's really their burden to make that argument to the appellate body after the immigration judge makes a finding. But even regardless, it really would be futile in this case because he didn't meet his burden of proof for establishing eligibility for relief or protection. So then do I suggest that they didn't exhaust the credibility finding and Before the, oh, yes, before the So that would automatically say we don't have jurisdiction to even review? Correct, Your Honor. I would expect that would be your argument. Yes, Your Honor. But again Let me talk about the jurisdiction. Sure. There's no question we lack jurisdiction because he had a prior controlled substance conviction. That's the general rule. However, the BIA didn't even address this, did it? The Board didn't address this Court's jurisdiction to review? No, no. It didn't address its own jurisdiction. It didn't even address the conviction for the drug offense, did it? In fact, the BIA didn't order him removed because of that offense. Instead, they ordered him removed on the merits of the application. Correct, Your Honor. So wouldn't that suggest that we then do have jurisdiction to at least review what the Board's done since they wouldn't even get into the conviction? I think it's clear that the Court does have jurisdiction to review the asylum withholding and cat claims here. Certainly, the Court has done that in the past. Isn't that contrary to the argument you made in your briefs? Well, the first I was going to say, how do you get those two together? The first brief was written a long time ago, I think in 2004. And since then, the Court has, in various cases, in situations exactly similar to this, has gone on to make determinations regarding asylum withholding of removal and cat. So I don't think it's really much of an issue anymore. Well, we came across a case called Uno Okaolu, 9th Circuit in 2005 case, which I don't think was cited in either brief. But it would seem to hold that if the BIA goes right to the merits and does not exercise the right to decide the case on the basis of the prior conviction, then we do have jurisdiction. Does that sound familiar? It definitely sounds familiar. That's why I'm saying that the Court does have jurisdiction to review the asylum withholding of removal and cat claims. All right. At the time that the brief was written, I think it was still an issue. The government was still taking the position that there was no jurisdiction. But since then, I think it's, the Court's been pretty clear about where it falls on that issue. All right. Well, then let's get to the credibility determination, if we're going to get to the merits. Isn't it speculative for the ALJs to call the testimony naive without finding more specific reasons to conclude that either it's incredible because it's inconsistent or it's inconsistent with other evidence? The mere labeling of the testimony as being naive because this Petitioner said that he heard on television that the Army was no longer persecuting people. Right. Where do we go with that? Well, you have to look at it in the context of what the immigration judge was talking about. We have two separate stories that he's given the Court. The first is that he, remember, there are two three-year stints where he served with the Guatemalan military.  The first, in his claim with the asylum application, in his declaration, he claims that there was nothing wrong at all with the first stint with the military. And then he decided to go back to the military. And then only in his second stint with the military did he run into these problems about having to follow orders that he didn't want to follow. And then there was this other claim that he made during testimony where he said, he changed his story. He said, no, this also happened in the first stint with the military. And there was this inconsistency. So the immigration judge, if you read the decision, was talking about how his first claim made a lot more sense than his second claim. And he said, in referring to why the second claim didn't make a whole lot of sense, he says, well, if you supposedly went through all this persecution or torture in your first stint with the military, you all of a sudden thought that you would go back and things would be different. And that's what he was referring to as naive. I'm not sure if that's so much a speculation as just saying that he's – maybe it was a poor choice of words, but I think he was trying to indicate that this didn't make a whole lot of sense in terms of the credibility of his claim. So what is the substantial evidence in the record as a whole that we can rely on to affirm if that's what you are asking for? Well, you have his testimony versus the declaration that's been given with his asylum  It's a pretty clear inconsistency. I mean, that's usually where credibility falls apart, when somebody makes a claim and then when they're subject to questions and cross-examination, that it doesn't hold up. Going back to Mr. Purcell's argument in the colloquy with Judge Smith, is the government arguing that the credibility issue has been waived in this case? Well, it certainly wasn't argued to the board. And I think that's why the board didn't address it in its decisions. It's a little bit confusing because, remember, this went back down to the immigration judge to review Catt, and the immigration judge revives the credibility issue. And again, in his second decision, says, I'm, you know, I'm again talking about credibility here. This was not an issue of credibility. But in his argument to the board, the first time it went to the board, what they argued was that it was translation problems and not actual credibility, and that he had met his burden of proof. So the board in his decision only said, this isn't, there's no problems with, there are no problems with credibility here, and there's, and you didn't meet your burden of proof. So is the government arguing? Oh, sorry. You haven't asked yet. What, assuming that, if you believe him, he does have grounds for the terrorist  If he's credible. If he's credible. Well, I don't think so. Again, again, the standard for. Wait, wait, wait. Here's the question. Oh, I'm sorry. If he's credible, and you've determined that his testimony supports his position, then you're out of luck, right? Oh, no, not at all, Your Honor. Again, the standard for determining whether or not somebody's eligible for protection under the regulations implementing the Convention Against Torture, you have to establish a clear probability. Again, that's 51%. And the evidence that he's submitted in that respect doesn't really meet that standard. When you look at. How do I get around, if I find the petitioner credible, how do I get around to Ghana versus the INS? Where the guy was six months in confinement for refusing to arrest Indofegians and warning others of a planned arrest, and we found that to be past persecution. Well, this situation is different than that, Your Honor. When he was, at least as far as his claim goes, when he was put in the hole as part of the military for refusing to file orders, he was let out after that. And he stayed with the military for another year. Now, if the Guatemalan military had wanted to persecute him on account of his political opinion, they had an entire year to do so. They didn't indicate that that's what they wanted to do. He stayed with them for an extra year. And if I get around past persecution, how do I get around Ramos-Vasquez versus the INS, which is certainly the same kind of circumstances where we held that was enough for future persecution? Well, I don't know. Well, again, this is with regard to Kat, which would be a clear probability of torture. What about in regard to asylum? Well, with regard to asylum, again, each case is different. I don't know the specific evidence that was presented in that case. But I do know that the evidence that he submitted in support of his claim in this case wasn't sufficient. Again, there's the situation where he was put in the hole with the military and he stayed with the military for a year afterwards. Now, and under the standard of review ---- There's certainly in this particular matter proof the Army is looking for him. Well, no. I mean, he's got evidence in the record that suggests that his relatives suggest they're still looking for him. Well, again, at the time this evidence was submitted, it was still a little bit of time after he had left the Guatemalan military. But since that time, it's now been over 20 years since he left the Guatemalan military. And the immigration judge did say that during his testimony he had claimed that the Guatemalan military was coming to his family in civilian clothing and saying that they were looking for him. But the immigration judge looked at that and he said, well, the affidavits that you submitted from your family don't really bear that out the way you've testified to it. So, again, under the standard of review, it's not a question of whether or not you could go both ways on that evidence. The question is whether or not the only way the immigration judge could have come out is to say that, yes, you did establish it. And based on the evidence here, given the amount of time since he deserted the Guatemalan military, given the fact that his evidence is really flimsy, and that's even putting aside the credibility problems. And the immigration judge also ---- Thank you, counsel. I'm sorry, I'm out of time. Your time has expired. Thank you very much for your time, Your Honor. Mr. Person, do you have a little reserve time? Yes, Your Honor. Just very briefly, I'm not trying to dodge this credibility issue. On page 197 of the record, the Court seems to characterize this, and I only have a few seconds, seems to say, well, I'm not going to really make a finding there. He says, I don't ---- again, I don't know how credible all this is, but at any rate it's not an extreme form of punishment. So he's retreating from the credibility issue and moving on to the merits of the case. I only have five seconds, so I thank the Court and counsel, Your Honor. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O Scannlain, N.R. Smith, Whyte